IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WENDELL FLORA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 7:18-cv-00240 |
| | ) | |
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, Wendell Flora, Mary Flora, The Frith Living Trust, Michael S. Hurt, and Frances K. Hurt, are landowners of three properties in Franklin County, Virginia, all in the path of the defendant's natural gas pipeline, which is currently under construction. In a separate case before this court, defendant Mountain Valley Pipeline, LLC (MVP) filed a condemnation action pursuant to eminent domain authority granted by the Federal Energy Regulatory Commission (FERC) in a Certificate of Public Convenience and Necessity (the FERC Certificate). *See generally Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, & Maintain a Nat. Gas Pipeline*, No. 7:17-cv-492 (W.D. Va.). In that case, this court granted MVP immediate possession of certain easements on all three properties (the Easements) for purposes of constructing and/or maintaining the pipeline. In this action, plaintiffs do not challenge the grant of possession of those Easements.

In their amended complaint, plaintiffs assert five claims (although two of them are labeled as the "second cause of action"): (1) an "inverse condemnation in violation of the Fifth

Amendment";[1] (2) a violation of 15 U.S.C. § 717f(h), a provision of the Natural Gas Act (NGA); (3) trespass; (4) continuing trespass; and (5) nuisance. (*See generally* First Am. Compl., Dkt. No. 7.) The last three claims are all brought pursuant to Virginia common law. All five are based on plaintiffs' allegations that, during its pipeline construction activities, MVP has failed to provide adequate sediment and erosion controls on the Easements on plaintiffs' (or adjacent) properties, and that these failures have led to mud, sediment, and water leaving the Easements and coming onto non-Easement portions of plaintiffs' properties, causing damage.

Plaintiffs' motion for temporary restraining order or preliminary injunction (Dkt. No. 2) is pending before the court and addressed herein. Because MVP was given notice and an opportunity to oppose the motion, the court will treat it as one for preliminary injunction. *See* Fed. R. Civ. P. 65; *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 283–84 (4th Cir. 2006) (concluding that a motion for temporary restraining order may be treated as a request for a preliminary injunction where the "opposing party had a fair opportunity to oppose it") (citation omitted). In this motion, plaintiffs request relief only on their claim for continuing trespass and only based on the intrusion of mud and earth (not water) onto their property. (Pls.' Reply 5 n.2, Dkt. No. 15.)[2] Specifically, they ask that the court enjoin MVP from continuing to trespass on their land by allowing mud and earth to flow from the Easements to other portions of their properties.

The motion has been fully briefed, the court took evidence and heard argument at a June 12, 2018 hearing, and the parties have provided supplemental briefing as requested by the court. Thus,

---

[1] Inverse condemnation is a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke*, 445 U.S. 253, 257 (1980). So, "[w]hile the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.*, 482 U.S. 304, 316 (1987).

[2] Under Virginia's modified common enemy doctrine, "surface water is a common enemy, and each landowner may fight it off as best he can, provided he does so reasonably and in good faith and not wantonly, unnecessarily or carelessly." *Mullins v. Greer*, 311 S.E.2d 110, 112 (Va. 1984). The parties agree that the doctrine applies to water, but disagree about its application to other substances like earth. Because the court resolves this motion on grounds unrelated to this doctrine, the court need not address these disagreements.

the matter is ripe for disposition. Additionally, plaintiffs filed a post-hearing motion to file supplemental evidence (Dkt. No. 20), which the court will grant. Both that supplemental evidence (Dkt. Nos. 20–21), as well as evidence and a notice submitted in response by MVP (Dkt. Nos. 22, 23), have been considered by the court. For the reasons discussed herein, the court will deny the motion for preliminary injunction.

## I. JURISDICTION AND PREEMPTION

Plaintiffs contend that the court has jurisdiction over this matter because they assert a taking in violation of the Fifth Amendment to the United States Constitution, for which no compensation has been paid, and also a claim that MVP violated 15 U.S.C. § 717f(h), the provision of the NGA that governs condemnation proceedings initiated by a holder of a FERC certificate of public convenience and necessity. Those claims, based on federal law, confer jurisdiction under 28 U.S.C. § 1331. Plaintiffs further assert that the court has supplemental jurisdiction over their state law claims, pursuant to 28 U.S.C. § 1367. Thus, at least on its face, the complaint appears to confer jurisdiction.[3]

Although MVP has not directly challenged jurisdiction, it has made what the court considers to be either a type of preemption argument or at least a challenge to the court's ability to order injunctive relief on the non-federal claims. Specifically, MVP contends that, "[b]ecause injunctive relief is inconsistent with the federal claim being asserted in this case, plaintiffs' motion should be denied." (MVP's Resp. to Mot. Prelim. Inj. 2, Dkt. No. 10.) MVP's counsel explained that argument at the hearing more fully: The basis for federal jurisdiction is the plaintiffs' inverse condemnation claim based on MVP's taking of their land, and it is clear that injunctive relief is not

---

[3] The court has an ongoing obligation to ensure that it has jurisdiction; the parties cannot confer it by agreement. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). MVP asserts a lack of jurisdiction and other jurisdiction-related defenses in its Answer. (Dkt. No. 25.) But it has not filed any motion on such ground. And, as noted, the complaint asserts claims under federal law. If subsequent filings or events call into question the court's jurisdiction, it will consider the question anew, as it must.

3

available as to that claim. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking."). According to MVP, then, the state law claims do not exist if there is a taking, because if there is a taking, then any trespass would be authorized and the sole remedy would be just compensation. More simply, MVP appears to be contending that plaintiffs cannot maintain both an inverse condemnation claim, which would be an *authorized* taking of property and would not permit an injunction as a remedy, and state law claims for trespass, which, by definition, are *unauthorized*.

MVP also points out that if there is no valid federal claim, or if the court later dismisses the federal claims for whatever reason, then the court could decline to exercise supplemental jurisdiction over the state law claims, although it would not be required to. *See* 28 U.S.C. § 1367(c)(2). MVP's counsel argued at the hearing that the potential for such a dismissal also renders the state claims "tenuous" and thus that they provide an uncertain basis for injunctive relief.[4]

Plaintiffs counter that it is consistent to seek both damages for past trespasses, in the form of just compensation, and an injunction to bar future trespasses. They also argue that Virginia law is clear that a continuing trespass can and should be enjoined. (Pls.' Reply 5–6.)

Although MVP's argument concerning the incompatibility or inconsistency between the state and federal claims is not explicitly couched as a preemption argument, there are some cases that hold that the Natural Gas Act preempts a state law claim for trespass in the context of the construction of a natural gas pipeline—at least where the pipeline company has a FERC certificate and sought to condemn the property. *See, e.g., Columbia Gas Transmission Corp. v. An Exclusive*

---

[4] For whatever reason, MVP did not specifically argue in response to the motion for preliminary injunction that the federal claims are without merit, only that they might be dismissed at some later point. In any event, resolution of the instant motion does not require the court to decide whether the federal claims are viable.

*Nat. Gas Storage Easement*, 747 F. Supp. 401, 404–05 (N.D. Ohio 1990) (holding that utility's condemnation action under the NGA with regard to an underground natural gas storage easement preempted landowner's counterclaim, a state law claim for trespass); *Humphries v. Williams Nat. Gas Co.*, 48 F. Supp. 2d 1276, 1279 (D. Kan. 1999) (holding that acts *predating* an NGA condemnation proceeding could be the subject of claims for trespass and unlawful taking and were not preempted, but if the gas company had followed "the letter and intent of § 717f(h)," the state law claims would be preempted); *N. Nat. Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 824 (8th Cir. 2004) (concluding that Iowa statutes and regulations regarding land use and restoration in pipeline construction were preempted where the FERC certificate did not include conditions allowing state regulation). *Cf. Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 804 (8th Cir. 2017) (applying Missouri law and holding that when an entity with eminent domain power "ignores that power and trespasses upon private land," the landowner must make an "election of remedies" between (1) an injunction or (2) a suit for damages for either trespass or inverse condemnation).

There are also cases to the contrary, in which courts have held or suggested that both types of claims could co-exist in the same suit. *See, e.g., Beck v. Atl. Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995) (stating that the fact that plaintiffs might have a viable federal takings claim does not preclude them from also bringing a state law claim); *Am. Energy Corp. v. Texas E. Transmission, LP*, 701 F. Supp. 2d 921, 932 (S.D. Ohio 2010) (concluding that inverse condemnation is not the exclusive remedy for a taking); *cf. Van Scyoc v. Equitrans, L.P.*, 255 F. Supp. 3d 636, 639–40 (W.D. Pa. 2015) (holding that, because the NGA did not completely preempt the field of natural gas regulation, defendant could not remove a complaint that alleged only state law claims of trespass and unjust enrichment; plaintiffs' state law claims were not required to be construed as federal inverse condemnation claims); *Humphries*, 48 F. Supp. 2d at 1283 (stating in dicta that regardless of

5

the timing of the filing of a condemnation action, such an action would not preempt trespass claims as to property *outside* of that to be condemned).

The court also recognizes that a party may plead alternative theories of liability under Federal Rule of Civil Procedure 8(e)(2), *Swedish Civil Aviation Admin. v. Project Mgmt. Enters.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002), or may seek remedies in the alternative at the outset of suit, *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 293–94 (4th Cir. 2010). So, even assuming that both types of claims and the two types of relief are exclusive, at this stage the court is not required to determine which set of claims is viable and which one is not, nor are plaintiffs required to elect between remedies.

The court notes these issues only because the likelihood of success on the merits on the state law claims—which plaintiffs must show to obtain an injunction—may be dependent on these intricate legal as well as factual issues. But the request for injunctive relief fails because plaintiffs have not made a clear showing there are likely to be future trespasses. Because the court resolves the pending motion on that ground, it need not resolve these other issues at this time. It is sufficient for purposes of this order that the court concludes it has subject-matter jurisdiction due to the assertion of a federal claim.

## II.  FACTUAL BACKGROUND

All three properties at issue are located in Boones Mill, Virginia, in Franklin County. As to all three, there was credible testimony from the owners showing that there were incidents in which some type of substance flowed off MVP's Easements, and the owners also testified about alleged damages that had resulted. The Hurt and Flora properties experienced fewer such events than the Frith property, and it appears that the incidents were primarily (if not exclusively) limited to periods when the area was experiencing significantly heavy rainfall.

Mr. Flora's property is located near Cahas Mountain Road, in Boones Mill. His testimony (and exhibits introduced through him, including pictures and a jar of water he obtained from one of the creeks on his property) supported his claim that matter flowed from MVP's Easements to other portions of his property, but only on or around the period of May 18, 2018, through May 22, 2018. And he acknowledged that, on those dates, there was very heavy rainfall.

The Frith property is owned by the Frith Family Trust, with Mr. Frith and his wife as the only trustees. They live on the property, Mr. Frith operates part of his construction company business there, and he also raises cattle on it. Mr. Frith testified as to four discrete events that occurred on his property, in which he alleged that mud or other matter left MVP's Easements: one in April (although this event is not mentioned in the complaint), two dates in May, which was the "worst event" and occurred after very heavy rains on May 26 and 27 (Memorial Day weekend), and a fourth event in June. Also, there was a post-hearing affidavit from him discussing a similar event that occurred subsequent to the hearing. Mr. Frith also testified about the amount of sediment deposited off of the Easement and his purported damages, including the sediment's effect on his top soil and negative effect on the soil generally, and the detrimental effects to the streams on his property.

Mr. Hurt's testimony was not as clear on the dates when he noticed mud or other matter coming from the Easements onto other areas of his property; but, based on the totality of his testimony, it appears that both the dates and the extent of the damages were more limited than for his neighbor, Mr. Frith.

Witnesses for MVP acknowledged that the erosion and sediment controls in place on the Easements are only designed to withstand a two-year rainfall event. Thus, when weather events occur that are more significant than that type of storm, the controls may not be effective.

7

In their complaint and again at the hearing, plaintiffs alleged that the Virginia Department of Environmental Quality (DEQ) was not doing its job, which was to investigate complaints and monitor MVP for violations concerning the implementation and maintenance of its erosion and sediment controls. At the hearing, several employees from DEQ testified. They indicated that they had received many citizen complaints regarding MVP's construction sites and insisted that they were doing their best to investigate all of those complaints. They also noted that when a maintenance problem is observed with a control device, MVP has a limited amount of time to address that problem before it becomes a "violation." One of DEQ's witnesses testified that erosion and sediment controls are "best management" practices, but that none of them are one hundred percent effective. He also stated that "the regulations" do not require the controls to be one hundred percent effective.[5]

### III. DISCUSSION

Pursuant to *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), which the parties agree applies here, the movant shows an entitlement to relief by establishing "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc) (quoting *Winter*, 555 U.S. at 20); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014) (discussing and applying *Winter* standard). The movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Further, as

---

[5] This testimony was echoed in the Fourth Circuit's recent opinion denying a petition for review with regard to the MVP Project and specifically with regard to the degradation of Virginia's water. *See Sierra Club v. State Water Control Board*, __ F.3d __, No. 17-2406, 2018 WL 3635962, at *7 (4th Cir. Aug. 1, 2018). There, the court noted FERC's acknowledgement that, despite compliance with erosion and sediment control measures, the MVP project might still result in negative effects from erosion and run-off, but that such effects should be temporary and localized. FERC also recognized the requirements MVP must follow with regard to restoring streambeds and banks once construction is complete. *Id.* Similar sentiments were expressed by DEQ, as reported in *Sierra Club*. *Id.* at *11.

8

the Supreme Court explained in *Winter*, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

In evaluating the plaintiffs' entitlement to relief, plaintiffs focus on the continuing trespass claim as to mud and earth, which is the only claim on which they seek an injunction. For the reasons explained below, the court concludes that plaintiffs have not made a clear showing that future trespasses are likely to occur. This failure undermines any likelihood of success in showing a *continuing* trespass (whether viewed as a separate cause of action or simply a trespass claim that will reoccur in the future). As a result, they cannot establish the first *Winter* requirement—a likelihood of success on the merits. The same failure also means that plaintiffs have not clearly shown that they are likely to suffer irreparable harm in the absence of an injunction. For these reasons, discussed in more detail below, the court will deny a preliminary injunction.

**A. Trespass and Continuing Trespass Under Virginia Law**

Setting aside both the difficulties regarding the unavailability of injunctive relief on the federal claims that confer original jurisdiction on this court and the potential preemption problem, the court notes that there was significant evidence adduced at the hearing to show a factual likelihood of success on the merits as to an entitlement to damages on the trespass claim or, alternatively, on a takings claim.

"A trespass is an unauthorized entry onto property that causes an interference with the property owner's possessory interest in the property." *First Va. Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 409 (4th Cir. 2000) (citing *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994)). With regard to a continuing trespass, it does not appear to the court to be a distinct and separate cause of action under Virginia law. Instead, "[a]n unprivileged remaining on land in another's possession is a continuing trespass for the entire time during which the actor wrongfully

9

remains. Such a continuing trespass is to be distinguished from a series of separate trespasses on land, as where A habitually crosses B's field without a privilege to do so." *Forest Lakes Cmty. Ass'n. v. United Land Corp. of Am.*, 795 S.E.2d 875, 886 (Va. 2017) (citation omitted).

In *Forest Lakes*, as in many Virginia cases, the issue of whether a trespass was continuous arose in the context of determining the accrual of a limitations period. Specifically, the courts discussing when the statute of limitations on a trespass claim accrues focus on whether there is: 1) a continuous trespass and the injury occurs all at once and is permanent, which results in a single accrual at the time of the first trespass; or 2) an ongoing and repeating invasion such that the period accrues anew each time a "new" trespass occurs. *Id.* at 881–84; *Bethel Inv. Co. v. City of Hampton*, 636 S.E.2d 466, 469–70 (Va. 2006); *First Va. Banks, Inc.*, 206 F.3d at 409–10. As the *Forest Lakes* court described on the facts before it, the question was whether, after an initial trespass of sediment from newly-constructed basins, "later sediment discharges [were] merely a continuation of the same injury or . . . so temporary and episodic as to imply the accrual of *new causes of action* triggering new . . . limitation periods." 795 S.E.2d at 884.

The other context in which Virginia courts discuss "continuing trespasses" is in determining whether injunctive relief is warranted. In this context, courts generally note that a trespass likely to continue into the future is a continuing trespass that can support a request for equitable relief. For example, plaintiffs cite to *Boerner v. McCallister*, 89 S.E.2d 23, 25 (Va. 1955), which states the "general rule" that:

> where an injury committed by one against another is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, the legal remedy is inadequate and the trespass will be prevented in equity by an injunction, the prevention of a multiplicity of actions at law being ones of the special grounds of equity jurisdiction.

*Id.* at 25; *see also Norfolk S. Ry. v. E.A. Breeden, Inc.*, 756 S.E. 2d 420, 424–25 (Va. 2014) ("[A]n injunction is the appropriate remedy for enforcement of a real property right.") (citations omitted).

Despite this language, the Supreme Court of Virginia has more recently recognized that, even in cases of a continuing trespass, a state court is not required to order injunctive relief, but that such relief is discretionary, not mandatory. *Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44, 53 (Va. 2008); *Mobley v. Saponi*, 212 S.E.2d 287, 289 (Va. 1975). Also, while it is clear that Virginia law *allows* an injunction as a remedy for a continuing trespass, the entitlement to injunctive relief in this case is dependent upon the federal standard for granting such relief, as plaintiffs acknowledged at the hearing. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992).

Based on the foregoing, the court is uncertain whether a "continuing trespass" is even a separate cause of action under Virginia law. But regardless of whether plaintiffs' claim is characterized as a separate claim called a "continuing trespass" or simply as a trespass claim that is reoccuring or likely to reoccur, they have not shown a likelihood of success on such a claim. That is because, as the court discusses next, plaintiffs may be able to show a past trespass, but not a future trespass.

**B. There Is Some Evidence of Past Trespasses.**

As discussed above, there was substantial (and largely undisputed) evidence before the court that matter (whether described as water, sediment, mud, or all three) travelled around, over, and/or under erosion and sediment controls erected by MVP and that the matter made its way from MVP's Easements to non-Easement portions of the three properties at issue, on at least one occasion for each property. This was shown not only through testimony of the landowners, but also through pictures, videos, and occasionally through other witnesses as well, including witnesses from DEQ and MVP. Indeed, even MVP does not appear to be claiming that this did not occur, and its Answer concedes that at least some of these events did occur. Many of the dates on which these events occurred followed periods of heavy rain in the area, and, as MVP witnesses admitted, its erosion

11

and sediment controls were designed only to withstand a standard Virginia two-year storm. Thus, as an MVP witness conceded, if another storm occurred that was more severe than a two-year storm,[6] MVP could not ensure that mud would not escape from the Easements.

With regard to at least the Frith property, evidence submitted at the hearing and supplemental evidence submitted afterward shows clearly that there has been sediment or mud from the Easements flowing onto portions of the property outside the Easements on more than one occasion, including one occasion in the week following the hearing.[7] Thus, at least as of late June, the issues causing matter to flow onto at least the Frith property had not been resolved. In short, for all of the property owners, there was certainly some evidence supporting an argument that a trespass had occurred, if not past repeated trespasses, assuming that no other defenses (like the common enemy doctrine) would apply and assuming the trespass claim is not otherwise preempted. There is significantly less evidence, however—and certainly not clear evidence—that any trespass is continuing or likely to reoccur, as the court addresses next.

**C. Plaintiffs Have Not Made a Sufficient Showing That Future Trespasses Are Likely.**

In this case, the court cannot find that plaintiffs have made a "clear showing" that another trespass is likely to occur in the absence of an injunction. This failure, as already noted, means that

---

[6] No evidence was introduced specifically describing the significance of May's rain events in those terms, *e.g.*, whether they were two-year events or ten-year events, etc. Numerous witnesses testified to extremely heavy rains during the period, however. That testimony is also consistent with news reports regarding rainfalls in the area generally, although the court does not rely on those in reaching its decision. *See, e.g.*, John Boyer, "Map: Which parts of Virginia saw the most rain during May," (May 31, 2018), available at https://www.richmond.com/weather/map-which-parts-of-virginia-saw-the-most-rain-during/article_6a8ea978-b049-524a-9ad0-f9bd78b7c84a.html (last visited August 3, 2018) (detailing that monthly rainfall totals for May 2018 in nearby Roanoke were 9.29 inches, making the month the "third-wettest [May] in 107 years").

[7] MVP has filed an affidavit responding to the post-hearing allegation concerning events on June 13, 2018. In it, MVP employee Tracy Hilbun responded that "*for the most part*, the attached photographs show conditions within the easement area following a heavy rain" and that "*most* of the conditions" within one of the photographs were within the easement area. (Hilbun Decl. ¶¶ 4–5, Dkt. No. 22-1 (emphasis added).) Although the affidavit goes on to explain that most of the alleged conditions were within the Easement areas and that MVP crews began cleaning up the affected areas the same day, as soon as the weather permitted it to do so, the affidavit implicitly acknowledges—by its use of the language emphasized by the court—that some of the matter travelled off the Easements. MVP does not appear to deny that, although it maintains its argument that the common enemy doctrine applies and means that plaintiffs have not shown an illegal trespass regardless.

they cannot establish either of the first two *Winter* requirements. Where a party fails to make a clear showing on any one of the four *Winter* factors, then a preliminary injunction cannot issue. *Real Truth About Obama, Inc.*, 575 F.3d at 345–46.

It is not clear that there is likely to be another weather event leading to another trespass. As the court has noted, the dates when the conditions arose were ones that saw significant amounts of rainfall in the area, and there is no evidence before the court that similar amounts of rain are likely to occur during the time that MVP is on the property engaged in construction. Furthermore, there was some credible testimony from MVP that, when complaints were received from landowners, MVP contractors took action in an attempt to remedy problems, even if those attempts were inadequate or unsuccessful. Thus, although the court cannot say with any certainty that MVP has improved any of its erosion controls to the extent that no further trespasses will occur, neither have plaintiffs met their burden of clearly showing that additional trespasses *will* occur absent an injunction.

Moreover, there have been substantial changes in the oversight provided by DEQ as to the erosion and sediment controls on the MVP Project. This is notable because the plaintiffs' complaint and argument at the hearing referenced the lack of oversight and lack of responsiveness of the DEQ as reasons the court should intervene. More importantly, the more active role that DEQ has taken since the hearing is significant because it undercuts any assertion that future trespasses are likely to occur without court intervention. However, even without the more active DEQ participation in the project, the court concludes that the property owners did not make a clear showing of irreparable harm in the absence of an injunction.

Two developments related to DEQ, in particular, are significant. First, MVP advised subsequent to the hearing that, in conjunction with DEQ, it suspended construction of the pipeline to address some of these very issues. (Dkt. No. 23.) Plaintiffs have not filed anything disputing

that, although the court understands from DEQ's public statements that at least some portions of the pipeline's route have since been inspected and released for continued construction. https://deq.virginia.gov (last visited July 26, 2018).

Second, on July 9, 2018, DEQ issued a Notice of Violation to MVP "for alleged violations including failing to install, maintain, or correct erosion and sediment controls." *DEQ Takes Enforcement Action Against MVP,* at https://deq.virginia.gov (last visited July 26, 2018); *see also* Notice of Violation No. 2018-CO-0001 (July 9, 2018), at https://www.deq.virginia.gov/Portals/0/DEQ/Water/Pipelines/MVPLandDisturbingNOV_July.pdf (last visited July 26, 2018) (noting observations showing violations of Virginia's legal requirements concerning erosion and sediment controls, including violations along Cahas Mountain Road, which likely included the Flora property).[8]

Both of these developments show a more active oversight role by DEQ and will no doubt give MVP additional motivation to address any lingering problems with its erosion and sediment controls. Thus, as a factual matter, they undermine the contention that an injunction is needed to prevent any future trespass.

The court also is cognizant of the fact that there are other agencies involved in regulating and monitoring these same issues on a detailed level and that those agencies have given MVP authorization to proceed. Plaintiffs counter with an argument that the mere fact that a FERC Certificate with numerous environmental-specific requirements has been issued does not decide the issue of trespass. For support, they rely on *Seventeen, Inc. v. Pilot Life Ins. Co.*, 205 S.E.2d 648 (Va. 1974), which they contend establishes that the mere issuance of a permit to an entity does not give MVP permission to trespass. *Seventeen, Inc.*, however, involved a vastly different context in

---

[8] According to the testimony at the hearing, the pipeline route crosses Cahas Road more than once. Based on the descriptions in DEQ's notice of violation, however, it appears that the crossing near the Flora property is referenced as an area where a violation occurred.

which the court simply held that a city's approval of a proposed site plan for an increased drainage system did not insulate the defendant from liability because "the City had no power to legalize Pilot's trespass upon the lands of Seventeen." *Id.* at 652.

By contrast, and as explained by the Fourth Circuit's opinion detailing the background of the MVP project and specifically addressing erosion and sediment controls, this entire project has been highly regulated and MVP's obtaining the necessary approvals involved extensive periods of comment and review before various coordinating federal and state agencies. *See generally Sierra Club*, 2018 WL 3635962. Further, the necessary approvals and permits issued by those various agencies have resulted in specific erosion and sediment control plans that are implemented with oversight and monitoring from DEQ. *See id.*, 2018 WL 3635962, at *12.

Given that background, the court's issuance of an injunction ignoring or contradicting the expertise of those other agencies that have engaged in extensive study and decision-making pursuant to an array of state and federal statutes and regulations would be imprudent, at best. At worst, it would transfer to this court the duty to monitor and determine whether MVP is in compliance with various controls, whether those controls are, in fact, effectively controlling run-off, and a whole host of related issues.[9]

In summary, the facts before the court are simply insufficient to conclude that it is likely future trespasses will occur. Thus, plaintiffs have failed to make a "clear showing" both of a likelihood of success and a likelihood of irreparable harm in the absence of the injunction.[10] They

---

[9] In similar, albeit not identical, circumstances, some courts have declined to exercise jurisdiction over certain trespass claims and instead deferred the controversy to FERC under the doctrine of "primary jurisdiction." *E.g.*, *Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1196 (D.N.M. 2010) ("FERC has primary jurisdiction over claims for trespass and ejectment of a FERC certified pipeline.") (citing *Tampa Interstate 75 Ltd. P'ship v. Fla. Gas Transmission*, 294 F. Supp. 2d at 1277, 1279 (M.D. Fla. 2003)); *see also Moore v. Equitrans, L.P.*, 49 F. Supp. 3d 456, 475–76 (N.D. W. Va. 2014) (explaining the doctrine of primary jurisdiction, but declining to apply it in case where the primary issue was whether a natural gas pipeline had been relocated in an incorrect place). MVP's attorney alluded to FERC expertise at the hearing, and MVP has asserted primary jurisdiction as a defense in its Answer.

[10] Because plaintiff fails to satisfy the first and second *Winter* requirements, the court need not address the third and fourth.

15

have not met the high standard to obtain the "extraordinary remedy" of a preliminary injunction. *See Winter*, 555 U.S. at 22.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to supplement (Dkt. No. 20) is GRANTED, and plaintiffs' motion for preliminary injunction (Dkt. No. 2) is DENIED WITHOUT PREJUDICE.

The clerk is further directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: August 3, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge